THE UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

<table>
<tr><td>UNITED STATES OF AMERICA<br>     - Plaintiff</td><td>)<br>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>v.</td><td>)<br>)<br>)<br>)</td><td>CASE NO. 21-cr-40-5</td></tr>
<tr><td>ROBERT MORSS<br>     - Defendant</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td></td></tr>
</table>

RECEIVED
Mail Room

FEB 2 0 2024

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Leave to file GRANTED

*[signature]* TREVOR N. MCFADDEN   3/13/24
United States District Judge

MOTION SEEKING A TWO-LEVEL REDUCTION PURSUANT TO AMENDMENT 821, PART A

Now comes the Defendant, Robert Morss, acting pro se and in forma pauperis, with
a motion seeking a two-level reduction in sentence pursuant to Amendment 821,
Part A.

On or about May 24, 2023 the Defendant, Robert Morss, was convicted of 18 USC
§§2111 and 2, Robbery and Aiding and Abetting, 18 USC §§111(a)(1) Assaulting,
Resisting, or Impeding Certain Officers, and 2 Aiding and Abetting, as well as
18 USC §§1512(c)(2) Obstruction, and 2 Abetting. The Defendant was sentenced to
66 months and given 24 months of supervised release (see Exhibit 1a).

LEGAL STANDARD

With respect to the legal justification for such a request, a federal court
generally "may not modify a term of imprisonment once it has been imposed."

Dillon v. US, 560 US 817, 819, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010)(quoting 18 USC §3582(C)). "Congress has provided an exception to that rule" in the case of the defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. Id. (Quoting 18 USC §3582(c)(2)):

> "[I]n the case of a defendant who has been sentenced to a term
> of imprisonment based on a sentencing range that has subsequently
> been lowered by the Sentencing Commission, the court may reduce
> the term of imprisonment after considering the factors set forth
> in 18 USC Section 3553(a) to the extent that they are applicable,
> if such a reduction is consistent with applicable policy state-
> ments issued by the Sentencing Commission."

In determining whether a defendant has been sentenced to a term of imprison-ment based on a sentencing range that has subsequently been lowered by the Sentencing Commission, the court must first identify "the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." See Dillon v. United States, 560 US 817, 826, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010).


## ELIGIBILITY

The Petitioner believes he is eligible for a reduction, and herein seeks relief based on the zero-point offenders amendment. This provision "provide[s for] a decrease of two levels from the offense level...for defendants who did not receive any criminal history points...and who's instant offense did not involve specified aggravating factors." Application to Amendment 821 (Parts

A and B, Subpart 1 Only), Amendment to the Sentencing Guidelines, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/2023/202308_RF-retro.pdf. Specifically, a defendant must meet all the following criteria to be eligible for relief:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under §3B.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 USC §848, decrease the offense level determined under Chapters Two and Three by 2 levels. Id.

In the case at bar, all prongs are met. The Amendment decreases Petitioner's offense level by two. The government will try to argue that the Petitioner's charges are in fact crimes of violence and therefore do not meet the requirements found in (3). While the statutes in question use the term 'assault,' they fail to state that it's aggravated assault, aggravated being a term necessary for it to qualify as a crime of violence. Note also that on the Petitioner's Judgement (see Exhibit 1 ), it has "assaulting" rather than aggravated assault the latter of which would be a crime of violence.[1]

Courts generally may not reduce the defendant's term of imprisonment to a term that is less than the minimum of the amendment guideline range produced by the substitution. §1B1.10(b)(2)(A). If the sentencing court originally imposed a term of imprisonment below the guidelines range, only then is the court authorized to impose a term "comparably" below the amended range. Dillon, 560 US at 827. First, the prisoner must have "been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." United States v. Taylor, 815 F.ed 248, 250 (6th Cir. 2016) (quoting Id.) Second, a reduction must be "consistent with applic-

able policy statements issued by the Sentencing Commission." Taylor, 815 F.3d at 250 (quoting §3582(c)(2)). USSG §1B1.10 contains the Sentencing Commission's policy statements. See USSG §1B1.10(a)(1) (stating that a reduction shall be consistent with the policy statements).

In determining whether a reduction is consistent with USSG §1B1.10, the court first calculates "by what amount" a prisoner's sentence "may be reduced" 28 USC §994(u), see Dillon v. United States, 560 US 817, 826-27, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). In doing so, it identifies the amended guidelines range and it substitutes this guidelines range for the original guidelines range. Dillon, 560 US at 827, USSG §1B1.10(b)(1).

If a reduction is consistent with USSG §1B1.10, the court must then shift its attention to any applicable factors under 18 USC §3553(a). Thus, this court may consider the Petitioner's post-sentencing conduct in determining whether he is entitled to a reduction under §3582(c)(2), see USSG §1B1.10 cmt. n.1b (iii) providing that courts "may consider post-sentencing conduct of the defendant." See Pepper v. United States, 562 US 476, 487-93, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011).

At the second step of the inquiry, the court must then consider any applicable factors set forth in §3553(a) and "determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Id. Section 3553(a) provides that a "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and it enumerates how the courts shall

consider "in determining an appropriate sentence, including the nature and
circumstances of the offense and the history and characteristics of the
defendant." 18 USC §3553(a)(1). See also Dillon, 560 US at FN2. With the
direction outlined by the Supreme Court and subsequent other Circuit's decisions,
this Court should   follow Dillon's two-step analysis and review  each motion
on a case-by-case basis.

A court has "the discretion to grant downward departures." Thus, a court may
consider the Petitioner's post-sentencing conduct in determining whether he
is entitled to a reduction under §3582(c)(2). See USSG §1B1.10 cmt. n.1(B)(iii)
(providing that courts "may consider post-sentencing conduct of the defendant").
See Pepper v. United States, 562 US 476, 487-93, 131 C.Ct. 1229, 179 L.Ed.2d
196 (2011). Also see Concepcion v. United States, 597 US (S.Ct. 6/27/2022).
In the case at hand, this court should echo these rules.[2]

## ADDITIONAL CIRCUMSTANCES WARRANT A SENTENCING REDUCTION

There are additional reasons as to why the Petitioner is seeking a reduction
from what he considers to be an unreasonable sentence imposed upon him. Also,
the sentence that Petitioner received yesterday, given changes implemented by
the USSC, could be different today based on intervening changes in the laws
and the Justice Department's new policy, along with other reasons for seeking
a reduction. Thus, this court should consider the guidelines as an advisory
starting point in imposing a sentence, but a court may impose a different
sentence if §3553(a) factors suggest the guidelines range is inappropriate.
In addition, see intervening changes in the law. United States Supreme Court
ruling Concepcion v. United States, 597 US S.Ct. 6/27/2022).

As this court is well aware of the United States Supreme Court in the
consolidated cases United States v. Booker, and United States v. Fanfan,
125S Ct. 738 (2005) ruled that the language in the sentencing reform act
making the sentencing guidelines mandatory was to be stricken. Thus, in the
words of the Court it became effectively advisory in all cases, Id. at 757. The
guidelines are now just one factor among several that sentencing courts are
required to consider in imposing a sentence that is sufficient but not greater
than necessary to achieve the purposes of sentencing set forth in 18 USC
§3553(a)(2). Also see Hughes v. United States, 138 S.Ct. 1765, 1772 (2018).

The primary direction in §3553(a)(2) states that the purposes of sentencing
are: to reflect the seriousness of the offense, to promote respect for the
law, and to provide just punishment for the offense, to afford adequate
deterrence to criminal conduct, to protect the public from further crimes of
the defendant, and to provide the defendant with needed educational or voca-
tional training, medical care, or other correctional treatment in the most
effective manner.

Section 3553(a) further directs sentencing courts to consider: (1) the nature
and circumstances of the offenses and the history and characteristics of the
defendant; (3) the kinds of sentences available; (6) the need to avoid
unwarranted sentencing disparities among defendants with similar recorts
who have been found guilty of similar conduct. The directive of Booker and
§3553(a) make clear that courts may no longer uncritically apply the guide-
lines. See Hughes v. United States, 138 S.Ct. 1765, 1772 (2018). The US
Supreme Court rule in Pepper v. United States, No. 09-6822 March 2, 2011,
held that a defendant may rely on the defendant's efforts at rehabilitation

following the initial sentencing as a basis to varying downward from the range recommended by the United States Sentencing guidelines. In the case at bar, this court should echo these rulings in Petitioner's case.

The US Supreme Court further ruled in Pepper v. United States, under the Federal Sentencing Guidelines, courts can consider the defendant's age, USSG §5H1.1; his educational and vocational skills §5H1.2; his mental and emotional condition, §5H1.3; his physical condition including drug or alcohol dependency; §5H1.4; his employment record, §5H1.5; his family ties and responsibilities, §51H1.6; his socio-economic record, §5H1.10; his civic and military contributions §5H1.15; and his lack of guidance as a youth, §5H1.12. The guidelines when considering these factors can be squared with the §3553 (a)(1) factors requirement that the court and this office alone will evaluate the "history and characteristics " of the defendant. This court can now evaluate all aspects of a defendant's history. Thus in cases which a defendant's history and characteristics are positive, such as Petitioner's considerations of all of the §3553(a) factors will call for a sentencing outside the guidelines warranting a reduction of Petitioner's sentence. Also see Concepcion v. United States, 597 US (S.Ct. 6/7/2022).

With respect to the 3553 factors the Petitioner is a low/minimum risk of recidivism (see Exhibit 2) as determined by the BOP, the people in the best position to judge him. While incarcerated he has tried to continue a life-long pattern of self-improvement by taking classes and working as a teacher's aide (see Exhibit 3), and he follows a rigid pattern of physical fitness. With respect to his life before prison the sacrifices he made for his country should work in his favor, and not against him. He jointed the Army at age 17 and became an Airborne Ranger at age 18 and was deployed with Second Ranger

Batalian to Afghanistan on three separate occasions.

Once out of the military he used the GI BIll to go to Penn State where he received his BA in 2020. With a degree in hand he tought High School history and worked as a personal trainer. While at Penn State he worked with the Office of Veterans Programs and the Veterans Benefit Innitiatives. Finally, he has no criminal history and zero criminal history points.[3]

Most people don't understand that incarceration affects not only the person incarcerated but those close to him. The Petitioner has strong ties to his mother, father, and brother as well as to his community and Veteran's organizations. Rather than being incarcerated with very limited ways to express himself, he would be more useful performing community service and helping veterans reincorporate themselves into the civilian world. It is worth noting how he has the support of family and community (see Exhibit 4). All of the above-mentioned factors, together with zero-criminal history points merit a two-level reduction in sentence.[4]

## JUSTICE REQUIRES APPOINTMENT OF COUNSEL

In any situation where new laws stemming from prior laws and new evidence or facts have to be marshaled and new arguments have to be made in aid of the court's sentencing decision, the Sixth Amendment requires the assistance of counsel, see Mempa v. Rhay, 389 US 128 (1967). In Mempa, the Supreme Court held that the right to counsel attaches to any stage of a criminal proceeding where substantial rights of the defendant may be affected, including hearings. To the extent such recommendations are influential in determining the resulting sentence, the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances, and in general aiding and assist-

ing the Petitioner to present his case is apparent. District Courts have discretion to decide to appoint counsel at any stage of the proceedings pursuant to the Criminal Justice Act, 18 USC 3006A(a)(1) and (c), among other statutes.

On April 27, 2023, the Commission submitted to the Congress amendments to the sentencing guidelines, policy statements official commentary, and statutory index, which became effective November 1, 2023. See 88 FR 28254 (May 3, 2023), Parts A and B Subpart 1 of Amendment 821 (Amendment 8 of the amendments submitted to Congress on April 27, 2023) pertaining to criminal history, have the effect of lowering guideline ranges for certain defendants. The Commission has now promulgated an amendment to include Parts A and B, Subpart 1 of Amendment 821 in the listing in 1B1.10(d) as an amendment providing a special instruction requiring that any order granting sentence reductions based on Part A or Part B, Subpart 1 of Amendment 821 shall not take effect until February 1, 2024, or later, and includes commentary explaining and clarifying this special instruction.

Defense counsel is necessary to aid in arguing Petitioner's claims and calculating the revised guideline range and marshaling the facts and evidence that pertain to these arguments and the applicable 3553(a) factors. Counsel is needed to defend against any of the government allegations that hinder Petitioner's ability to gain relief on these arguments presented in his motion.

The appointment of counsel is needed to assist Petitioner in presenting his motion, to this court properly and marshal new fact-based arguments to utilize the United States Sentencing Commission's recent significant changes to the guidelines regarding retroactive application of Parts A and B, Subpart 1 of

Amendment 821 (Amendment B of the amendments submitted to Congress on April 27, 2023, pertaining to crimianl history). Thus, the effective date of this amendment is November 1, 2023. As it relates to inmates filing motions pursuant to 18 USC 3582(c)(2) and USSG 1B1.10. Thus, these important USSG changes must be raised and argued under a 3582(c) motion before this Honorable Court at a hearing or they will be completely lost, including the right to appeal the sentence imposed and the right to be resentenced under an advisory guideline. Potential losses of legal rights and prejudice take on increased significance when Petitioner's legal arguments are not heard by this Honorable Court or counsel isn't appointed to represent Petitioner to present those issues for correction. At the very least, defense counsel can ensure a smoother process for a Section 3582(c)(2) hearing and resentencing and remind the court of the numerous arguments, issues, and 3553(a) factors furthered by appointment of counsel. Since the government cannot negotiate directly with a defendant, appointment counsel is warranted in Petitioner's case. See Italbert v. Michigan, 545 US 605, 623 ("No one questions that the apointment of counsel at state or government expense would be more efficient and helpful not only to defendants, but also the courts.")

Indigent defendants seeking relief may petition the court to appoint counsel to represent them. Courts may exercise their broad discretion to appoint counsel when the defendant presents a non-frivolous claim and if the appoint-ment of counsel will benefit the defendant and the court. Many circuits require a finding by the court that the defendant's claim is plausible. In determining the propriety of appointing counsel, circuits consider whether there are special circumstances that merit appointment, such as the legal and factual issues involved.

February 14, 2024
Cresson, PA

Submitted by:

Robert Morss

FOOTNOTES

1. The District of Columbia's simple assault statute does not qualify the act
   as a "crime of violence." US v. Barahona, 2014 D.C. Super. LEXIS 19 (2014).
   Simple is a misdemeanor offense. It is not "an enumerated "crime of violence"
   for purposes of sentence enhancement. Hicks v. US, 730 A.2d 657 (D.D. Ct of
   App, 1999). In US v. Heilman, 377 Fed Appx 157, 218 (3rd C, 2010) it was
   determined that simple assault no longer qualified as a crime of violence
   given the Supreme Court decision in US v. Begay, 553 US 137 (2009).

2. With respect to the Petitioner's sentence please note how on his J&C,
   page 3, he has never been delivered to the BOP. He is still in custody of
   the US Marshalls, illegally, and his sentence has not begun (see Exhibit 1).

3. Also, the Petitioner has no history of violence prior to or post his day
   of conviction.

4. With respect to Exhibit 4 please note that the Petitioner has numerous offers
   of employment.

Clerk of the Court                                    February 13, 2024
US District Court
333 Constitution Ave, NW
Washington, DC 20001

in re: Case no. 21-cr-40-5

Dear Sir/Madam:

With respect to the above-mentioned case number, I have enclosed a motion
seeking a two-level reduction of sentence pursuant to Amendment 821, Part
A. Please note that I am prose and in forma pauperis.

I appreciate your consideration and await your reply.

                                    Sincerely,

                                 x _____
                                    Robert Morss

RECEIVED
Mail Room

FEB 2 0 2024

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

AO 245B (Rev. 09/19)  Judgment in a Criminal Case          EXHIBIT 1
                      Sheet 1

# UNITED STATES DISTRICT COURT
### District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| ROBERT MORSS | ) Case Number:  21-cr-40-5 (TNM) |
| | ) USM Number:  49896-509 |
| | ) Nicholas D. Smith |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)     20, 27, 34 of the Fifth Superseding Indictment filed on 12/1/2021
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §§ 2111 and 2 | Robbery and Aiding and Abetting | 1/6/2021 | 20 |
| 18 USC §§ 111(a)(1) and 2 | Assaulting, Resisting, or Impeding Certain Officers and Aiding and Abetting | 1/6/2021 | 27 |

     The defendant is sentenced as provided in pages 2 through ___8___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)  __all remaining counts__  ☐ is  ☑ are dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

                                         5/24/2023
                                   Date of Imposition of Judgment

                                   Signature of Judge

                                   Trevor N. McFadden, U.S. District Judge
                                   Name and Title of Judge

                                   6/8/23
Date

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1A

Judgment—Page   2   of   8

DEFENDANT: ROBERT MORSS
CASE NUMBER: 21-cr-40-5 (TNM)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §§ 1512(c)(2) and 2 | Obstruction of an Official Proceeding and Aiding and Abetting | 1/6/2021 | 34 |

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __3__ of __8__

DEFENDANT: ROBERT MORSS
CASE NUMBER: 21-cr-40-5 (TNM)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
SIXTY-SIX (66) MONTHS on Counts 20 and 27, and 34. All terms to run concurrently.

☑ The court makes the following recommendations to the Bureau of Prisons:
- incarceration at FCI Loretto or FCI Fort Dix

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:
☐ at _____ ☐ a.m. ☐ p.m. on _____
☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
☐ before 2 p.m. on _____
☐ as notified by the United States Marshal.
☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

```
LORHK  540*23                SENTENCE MONITORING              10-11-2023
PAGE 001                     COMPUTATION DATA                 08:42:13
                             AS OF 10-11-2023
```

REGNO..: 49896-509 NAME: MORSS, ROBERT


```
FBI NO..........: 204897JF5           DATE OF BIRTH: 08-20-1993  AGE:  30
ARS1............: LOR/A-DES
UNIT............: 1 GP                QUARTERS.....: N03-271U
DETAINERS.......: NO                  NOTIFICATIONS: NO
```

FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 08-18-2025

THE INMATE IS PROJECTED FOR RELEASE: 02-18-2026 VIA GCT REL


----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, DISTRICT CRT
DOCKET NUMBER...................: 21-CR-40-5(TNM)
JUDGE...........................: MCFADDEN
DATE SENTENCED/PROBATION IMPOSED: 05-24-2023
DATE COMMITTED..................: 09-22-2023
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                  FELONY ASSESS  MISDMNR ASSESS  FINES      COSTS
NON-COMMITTED.:   $300.00        $00.00         $00.00      $00.00
```

RESTITUTION...: PROPERTY: NO  SERVICES: NO      AMOUNT: $2,000.00

----------------------CURRENT OBLIGATION NO: 010 ----------------------
OFFENSE CODE....:  866     18:1512 OBSTRUCT JUSTICE
OFF/CHG: 18:2111 AND 2 ROBBERY AND AIDING AND ABETTING, 18:111(A)(1)
         AND 2 ASSAULTING, RESISTING, OR IMPEDING CERTAIN OFFICERS AND
         AIDING AND ABETTING

```
SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:   66 MONTHS
TERM OF SUPERVISION............:   24 MONTHS
DATE OF OFFENSE................: 01-06-2021
```


G0002      MORE PAGES TO FOLLOW . . .

```
  LORHK   540*23 *          SENTENCE MONITORING        *    10-11-2023
PAGE 002 OF 002 *          COMPUTATION DATA            *    08:42:13
                           AS OF 10-11-2023
```

REGNO..: 49896-509 NAME: MORSS, ROBERT


-------------------------CURRENT COMPUTATION NO: 010 ---------------------------

COMPUTATION 010 WAS LAST UPDATED ON 08-11-2023 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 08-16-2023 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 05-04-2023
TOTAL TERM IN EFFECT............:    66 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     5 YEARS        6 MONTHS
EARLIEST DATE OF OFFENSE........: 01-06-2021

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                    06-11-2021     05-03-2023

TOTAL PRIOR CREDIT TIME.........: 692
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 297
TOTAL GCT EARNED................: 108
STATUTORY RELEASE DATE PROJECTED: 02-18-2026
ELDERLY OFFENDER TWO THIRDS DATE: 02-11-2025
EXPIRATION FULL TERM DATE.......: 12-12-2026
TIME SERVED.....................:     2 YEARS        4 MONTHS      1 DAYS
PERCENTAGE OF FULL TERM SERVED..: 42.4
PERCENT OF STATUTORY TERM SERVED: 49.7

PROJECTED SATISFACTION DATE.....: 02-18-2026
PROJECTED SATISFACTION METHOD...: GCT REL
```

G0000       TRANSACTION SUCCESSFULLY COMPLETED

EXHIBIT 2

FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:49896-509, Last Name:MORSS

U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| Register Number: 49896-509 | Risk Level Inmate....: R-LW |
| Inmate Name | General Level......: R-LW (10) |
| Last.........: MORSS | Violent Level......: R-MIN (6) |
| First........: ROBERT | Security Level Inmate: LOW |
| Middle.......: | Security Level Facl..: LOW |
| Suffix.......: | Responsible Facility.: LOR |
| Gender.........: MALE | Start Incarceration..: 05/04/2023 |

**PATTERN Worksheet Details**

Item: Programs Completed, Value: 1

General Score: -3, Violent Score: -1

Risk Item Data

Category - Assignment - Start          - Stop

EDC      GREATCOURS  09/24/2023 11:30   09/24/2023 11:30

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Item: Work Programs, Value: 0

General Score: 0, Violent Score: 0

Risk Item Data

No Data



**Individualized Needs Plan - Program Review     (Inmate Copy)**      SEQUENCE: 02311200

Dept. of Justice / Federal Bureau of Prisons                Team Date: 10-11-2023

Plan is for inmate: MORSS, ROBERT  49896-509

| | | | |
|---|---|---|---|
| Facility: | LOR LORETTO FCI | Proj. Rel. Date: | 02-18-2026 |
| Name: | MORSS, ROBERT | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | 49896-509 | DNA Status: | LEW04901 / 01-04-2023 |
| Age: | 30 | | |
| Date of Birth: | 08-20-1993 | | |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LOR | AIDE EDUC | EDUCATION-TEACHER AIDE | 09-30-2023 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LOR | ESL HAS | ENGLISH PROFICIENT | 09-25-2023 |
| LOR | GED HAS | COMPLETED GED OR HS DIPLOMA | 09-25-2023 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LOR | | COVID19 AND EXERCISE | 10-06-2023 | CURRENT |
| LOR | | FCI GRIP STRENGTH | 09-29-2023 | CURRENT |
| LOR | | INTRO TO HOBBY CRAFT | 10-05-2023 | CURRENT |
| LOR | C | THE GREAT COURSES DVD SERIES | 09-24-2023 | 09-28-2023 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 09-22-2023 |
| CARE1-MH | CARE1-MENTAL HEALTH | 09-28-2023 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 09-26-2023 |
| REG DUTY | NO MEDICAL RESTR~REGULAR DUTY | 12-21-2022 |
| YES F/S | CLEARED FOR FOOD SERVICE | 12-21-2022 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED WAIT HX | DRUG EDUCATION WAIT-RQ HIST | 09-29-2023 |

### FRP Payment Plan

| Most Recent Payment Plan |
|---|

**FRP Assignment:**   **UNASSG**   **FINANC RESP-UNASSIGNED**      **Start: 12-19-2022**

Inmate Decision:  **AGREED**    **$50.00**       Frequency: **QUARTERLY**

Payments past 6 months:   **$0.00**       Obligation Balance: **$2,300.00**

#### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $300.00 | $300.00 | IMMEDIATE | AGREED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST FV | $2,000.00 | $2,000.00 | IMMEDIATE | AGREED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

### FRP Deposits



Individualized Needs Plan - Program Review   (Inmate Copy)          SEQUENCE: 02311200
Dept. of Justice / Federal Bureau of Prisons                         Team Date: 10-11-2023
Plan is for inmate: MORSS, ROBERT  49896-509

Trust Fund Deposits - Past 6 months:  $1,374.00          Payments commensurate ?   Y

New Payment Plan::  ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| AWARD | EBRR INCENTIVE AWARD | 09-29-2023 |
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 09-29-2023 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 10-11-2023 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 10-11-2023 |
| N-COGNTV N | NEED - COGNITIONS NO | 10-11-2023 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 09-24-2023 |
| N-EDUC N | NEED - EDUCATION NO | 10-11-2023 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 10-11-2023 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 10-11-2023 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 10-11-2023 |
| N-MEDICL N | NEED - MEDICAL NO | 10-11-2023 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 10-11-2023 |
| N-SUB AB Y | NEED - SUBSTANCE ABUSE YES | 10-11-2023 |
| N-TRAUMA Y | NEED - TRAUMA YES | 10-11-2023 |
| N-WORK N | NEED - WORK NO | 10-11-2023 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 10-11-2023 |

## Progress since last review

Recent arrival no previous goals.

## Next Program Review Goals

Inmate is encouraged to complete SPARC-13 assessments.
Inmate is encouraged to enroll in Money Smart.
Inmate is encouraged to seek out proper paperwork and protocol to obtain his Social Card.
Inmate is encouraged to have enrolled in any programs recommended by Education, Psychology and Religious Services.

## Long Term Goals

Inmate is encouraged to have completed all SPARC-13 assessments by the next review.
Inmate is encouraged to have completed Money Smart by October 2024.
Inmate is encouraged to have sent out the paperwork to receive his Social Security Card or have acquired his Social Security Card by October 2024.
Inmate is encouraged to have completed or have made a good effort to complete the programs recommended by Education, Psychology and Religious Services by October 2024.

## RRC/HC Placement

No.
Management decision - INMATE HAS NOT YET BEEN REVIEWED VIA THE 2ND CHANCE ACT FOR RRC PLACEMENT DUE TO THE INMATE HAVING GREATER THAN 19 MONTHS REMAINING TO BE SERVED ON HIS FEDERAL SENTENCE. HE WILL BE REVIEWED WHEN ELIGIBLE..

## Comments

Sentencing District: District of Columbia
Relocation District: Western District Pennsylvania
First Step Act Review Complete - eligible/Low

Will need relocation two years prior to release
*Save $10 a month in your Pre-Release Account (Commissary Account) if your FRP is paid in full.



Individualized Needs Plan - Program Review   (Inmate Copy)     SEQUENCE: 02311200
Dept. of Justice / Federal Bureau of Prisons              Team Date: 10-11-2023
Plan is for inmate: MORSS, ROBERT   49896-509

Name:  MORSS, ROBERT          DNA Status:   LEW04901 / 01-04-2023
Register No.:  **49896-509**
Age:  30
Date of Birth:  08-20-1993

_____

Inmate   (MORSS, ROBERT. Register No.: 49896-509)

_____

Date

_____       _____

Unit Manager / Chairperson              Case Manager

_____       _____

Date                                    Date

```
   LORAO            *        INMATE EDUCATION DATA        *     02-12-2024
PAGE 001 OF 001 *               TRANSCRIPT               *     13:35:17


REGISTER NO: 49896-509     NAME..: MORSS                 FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: LOR-LORETTO FCI


------------------------- EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
LOR  ESL HAS   ENGLISH PROFICIENT        09-25-2023 0918 CURRENT
LOR  GED HAS   COMPLETED GED OR HS DIPLOMA 09-25-2023 0917 CURRENT


-------------------------- EDUCATION COURSES --------------------------
SUB-FACL   DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
LOR        FRENCH 3                     01-23-2024  CURRENT
LOR        BASIC FRENCH                 12-12-2023  01-18-2024  P   C  P   10
LOR        PERIODIZATION                12-14-2023  01-14-2024  P   C  P    2
LOR        HRV-HEART RATE VARIABILITY   12-15-2023  01-14-2024  P   C  P    2
LOR        HEART-HEALTHY STEPS          12-15-2023  01-14-2024  P   C  P    2
LOR        BACK PAIN                    12-14-2023  01-14-2024  P   C  P    2
LOR        ASTHMA                       12-14-2023  01-13-2024  P   C  P    2
LOR        INTRO TO SPORTS OFFICIATING  12-15-2023  12-30-2023  P   C  P    2
LOR        THE GREAT COURSES DVD SERIES 11-06-2023  11-09-2023  P   C  P   12
LOR        BASIC FRENCH                 10-31-2023  11-28-2023  P   C  P   10
LOR        INTRO TO MUSIC THEORY        11-08-2023  12-08-2023  P   C  P    2
LOR        EFFECTS ON GROUNDING         11-29-2023  12-08-2023  P   C  P    4
LOR        COOLED WATER IMMERSION       11-08-2023  12-08-2023  P   C  P    4
LOR        COLOR THEORY                 12-02-2023  12-02-2023  P   C  P    2
LOR        THE GREAT COURSES DVD SERIES 10-18-2023  10-24-2023  P   C  P   12
LOR        THE GREAT COURSES DVD SERIES 10-05-2023  10-18-2023  P   C  P   30
LOR        TUTOR TRAINING               10-01-2023  10-01-2023  P   C  P    2
LOR        FCI GRIP STRENGTH            09-29-2023  10-25-2023  P   C  P    2
LOR        COVID19 AND EXERCISE         10-06-2023  10-25-2023  P   C  P    2
LOR        INTRO TO FLY FISHING         10-17-2023  10-25-2023  P   C  P    2
LOR        INTRO TO HOBBY CRAFT         10-05-2023  10-15-2023  P   C  P    2
LOR        THE GREAT COURSES DVD SERIES 09-24-2023  09-28-2023  P   C  P   12




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

October 15, 2022

To Whom It May Concern,

I have had the honor and privilege to know Robert Morss for approximately the last 5 years. When I was the Commander of Petersburg American Legion Post 150, in Petersburg, Pennsylvania (2014-2018)I had set several goals that I hoped we could accomplish during my time as Commander. One of those goals was to have a mural painted on the wall in our social room. Unfortunately, during my time as Commander we were never able to find someone to make it happen. Shortly after serving my time as Commander, I walked into the Legion one day and was told that someone was found, who volunteered, and was willing to paint us the mural. That person was back in the social room looking at the blank wall that the mural would be painted on. I walked back into the social room introduced myself to Robert, and our friendship began. From our first meeting, I knew we had found the right person to tackle this project. Robert told me about his military background, with him having done several tours of duty in Iraq /Afghanistan. Robert told me that this project would not only be done with his hands, but also from his heart. To complete the project, Robert and his crew of helpers, traveled from their homes in State College, Pa. approximately a 50 mile round trip drive, several days each week, for many weeks. All done at their own expense.  At the conclusion of the mural project the Legion had a ceremony to unvail the mural to the public. The mural consisted of 10 panels, each one honoring a United States war or conflict (Revolutionary War, Civil War, W.W. I, and II, Korea, Viet Nam, etc.) Robert was the MC for the ceremony. As each section was unvailed, Robert talked about the history of that conflict and how it affected the United States. He did a fantastic job, and spoke from his heart. During our conversations while the mural was being painted, Robert told me that he wanted to be a high school history teacher. He wanted to have a small part in educating our younger Americans on the history of our great country. Robert fulfilled that wish when he was hired as a history teacher at Shaler High School, near Pittsburgh. I truly believe we need more Roberts in this world. He is a man who cares about people, has strong values, principle values. Before my retirement, I was involved in management for 42 years. I consider myself a good judge of people. I truly believe that Robert is a good person with good intentions. I highly endorse Robert Morss as being a good person of character, and well meaning.

If you wish any additional comments, or have any questions, please feel free to contact me.

Best Regards,

Don MacEachern

Address: 7159 School Lane, Alexandria, Pa. 16611
Home Phone: 814-669-4080
Cell Phone: 814-386-2815

Offer of Employment: Glenshaw Steel
Offer of Employment: Stimple and Ward


Offer if Employment: Sierra Boiler Services


**NOTEWORTHY ITEMS~**





# DAILY NEWS

*Your Hometown Newspaper*

Est. 1922

MLB:
Shorter double-headers may ease scheduling chaos,
Page 4

TUESDAY, AUGUST 4, 2020

# Veterans unveil mural

## Petersburg Legion celebrates 100th anniversary

By REBECCA BERDAR
For The Daily News

The family of veterans and supportive patriots which has grown up around the Cloyd K. Davis American Legion Post 150 in Petersburg assembled Saturday to commemorate the post's centennial by unveiling a mural chronicling the battles and sacrifices that have shaped the nation and preserved its principals.

The 10-panel painting pays tribute to America's war veterans who served over the past 244 years, from the Revolutionary War to the battles in the Middle East.

The lead artist, Robert Morss, hails from Reno, Nevada, and served three tours in Afghanistan as an U.S. Army Ranger. He's now a Penn State University student, slated to graduate in the fall with degrees in secondary education, history and political science.

Morss recruited fellow Penn Staters to work on the mural, which was the brainchild of former Post 150 commander Don MacEachern. The crew initiated their project in November by sketching out the panels and started putting paint on the wall in January. The group, which trekked back and forth between State College and Petersburg for seven months, finalized the mural Friday morning just ahead of Saturday's celebration.

"It's been a honor falling in love with this Legion," Morss



Photo by REBECCA BERDAR

Mary Ann (Davis) Metz, niece of American Legion Post 150 namesake Cloyd K. Davis, unveiled the first section of a 10-panel mural which was dedicated Saturday during the post's 100th anniversary.

said. "For 100 years, this place has stood to be a safeguard for veterans, wandering souls and for those who need a place to call home."

Morss thanked Post 150's members and officers for their stewardship over the past century.

"I am proud of this place," he said. "I knew this was hallowed ground when I arrived ...

and it will stand for another 100 years."

Shelly Ormsby, Post 150 treasurer, served as emcee and introduced the community members who were selected to unveil each of the panels.

The first panel in the series, dedicated to the American Revolution, depicts a trio of Continental Army soldiers warming themselves around a campfire

in the dead of night, as Gen. George Washington sits astride a horse in the distance. The honor of unveiling this panel was given to Mary Ann (Davis) Metz, niece of Post 150's namesake Cloyd K. Davis.

The second panel honors the War of 1812 between the Unit-

See Mural
Page 3

Friday, July 31, 2020                                                    LOCAL

# MURAL: To inspire next generation

(Continued from Page A1)

Morss said he went back to doing his homework and when the meeting was over, he approached Ormsby.

"I said, 'My name is Robert Morss and I think I can get that done for you,'" he said. "We have been working on it since then."

For Morss, 27, of Reno, Nevada, working on the mural is personal. A four-year veteran of the United States Army, Morss said it is a way for him to honor those who have come before him, while setting an example for those who will follow.

Morss said the mural begins with a scene of soldiers standing around a campfire at Valley Forge and ends with the present-day conflict in Afghanistan.

"Between those panels is an evolution of warfare with different scenes that capture the heroic and patriotic moments of our nation's history," he said.

Enlisting the help of some of his Penn State peers, Morss said the process of bringing the mural to life has been a humbling experience.

"It has been a beautiful thing to sketch it out and



Courtesy photo

Adam Paton (left) and Robert Morss work on the 10-panel war mural at the Petersburg American Legion Post 150. The mural, depicting scenes from every major war America has fought since the Revolution, will be unveiled to the public at noon Saturday.

watch it come to life as people have joined in," he said. "I am grateful for the support I have been getting throughout this journey."

Morss said the panels not only show America's battles, but also historical milestones in military evolution.

"It shows an African American soldier fighting alongside white soldiers after the Military Integration Act, and the first female combatant, a pilot in the Gulf War.

Morss said the mural will stand as a testament to everyone who has served, and those who will one day serve.

"It's about honoring those who have come before us," he said. "It is also about the next generation that is com-

ing up. We have left plenty of room on the wall for more panels to be inserted. America is not done fighting wars to protect its people and its lands, and the next generation is going to have to do that. I want this mural to inspire them and challenge them."

*Mirror Staff Writer Rick Boston is at 946-7535.*



PAGE 2 | OCT. 15-17, 2018     LOCAL     THE DAILY COLLEGIAN

# A CHANGE OF FIELD

## Ex-military students transition from service to school

By Lilly Forsyth
THE DAILY COLLEGIAN

Once students turn their tassels at high school graduation, many count the days left until college moves on.

Other students, however, are counting down the days until they don a military uniform and train to serve in the armed forces.

Two students, Robert Morss and Vlasul Efthymiou, shared stories of their transitions from serving in the Army directly after high school to beginning their undergraduate studies at Penn State.

### Finding his passion

A 17-year-old Robert Morss asked his "proud yet terrified" parents to sign the waiver that would allow him to enlist in the Army as a minor.

Growing up surrounded by family and friends who served in the military, Morss (junior-secondary education) was aware of the pride and honor that stems from service.

He also didn't want to have had the funds to go to college.

"I wanted nothing to do with college at the time," Morss said. "I didn't want anything to do with school, period."

Not wanting to be like typical Reno, Nevada, residents who "live there and... die there," Morss met with an Army recruiter and began the process of joining the infantry division.

Later, Morss was offered a ranger contract with the Army and left home for the 2nd Ranger Battalion — stationed in Fort Lewis, Washington.

He was deployed three times in his four years of service.

Before he put on the uniform, though, Morss knew he wasn't looking for a life-long military career.

"I knew I wanted a wife and kids," Morss said. "I kind of had an idea that I wanted to be a teacher, but I wasn't really there yet."

His experiences in uniform reinforced these thoughts.

"After getting in, I'm looking around at all these people that said their sons in the military and I'm like, 'I don't want to be you,'" Morss said.

"I appreciate your service and I appreciate you because without you, we wouldn't be as free as we are, but that wasn't my path."

During his first deployment, the concept of becoming a high school history teacher would be the next step in his life journey.

"That sort of all hit me like a ton of bricks," Morss said. "I said 'When I get out, I'm going to go to college and getting my degree and being a high school history teacher.'"

During a recent assignment for his "English language learner" class, Morss drafted a letter in English and Spanish to send to the parents of his future students, explaining his teaching goals.

With enthusiasm in his eyes, Morss highlighted parts of his letter, which included plans for parent-student interactive homework and moments in which he would dress up in costume to help students learn.

He noted that he wants his future students to understand they aren't limited to only learning about history — they can make it, too.

As the son of two teachers, he wants to be a similar source of support like his parents are for him.

With the future in sight, Morss is ready for the next phase of his life.

"I'm pumped," Morss said through a giant smile. "I cannot wait [to be a teacher]."

> "The stress that comes from not having control over what happens... That's something that no one really talks about."
>
> Vlasul Efthymiou
> sophomore

### A Cypriot soldier

On the other side of the world, Vlasul Efthymiou graduated high school and went right into the army — the Cyprus army, that is.

"Coming out of high school and going into the army isn't as bad as you'd think because you're placed right into it and you have to adjust into that," Efthymiou (sophomore-division of undergraduate studies) said.

Born and raised in Cyprus, a country located in the Mediterranean, Efthymiou was automatically enlisted in the military for nine months of mandatory basic training as part of the country's conscription policy, which impacts all males aged 18.

Since one of his brothers served in the military before him, Efthymiou was obligated to fulfill the entire nine months.

Though it took some adjustments and personal sacrifices, Efthymiou found a place in the army and continued his service to a second tenant for a total of two years.

One of hardest things Efthymiou had to deal with was the loss of independence.

"Being in the army, you literally give them everything," Efthymiou said. "They can do whatever the f*** they want and that's it. You have no choice."

Efthymiou's mother also battled cancer while he was enlisted. Because of the limited amount of approved absences he was allowed, he was only able to visit his mother before two of her surgeries.

When Efthymiou decided he had gotten what he needed out of the army, he started to assess his options. Before leaving the military, Efthymiou opened a beach bar and later took a gap year to "decompress" and explore Europe.

Since coming to the United States for the first time to get an education, Efthymiou has had a "difficult" college experience so far.

"I get the classes and things like that, but getting back into... studying... has been very difficult," Efthymiou said.

In terms of social interactions, Efthymiou hasn't found much help due to the fact that he was housed in Atherton Hall, where he lived among upperclassmen.

"As [an older, undergraduate student], it's getting harder... because I can't really bond with [underclassmen] especially freshmen because the age gap is very different," Efthymiou said.

The 23-year-old also found it difficult to relate to some people in his high school class because they had the ability to go to college right after graduation. Efthymiou recalled one of his friends finishing his master's degree before he started his freshman year of college.

"It feels like you're being left behind and it sucks," he said.

Despite these feelings, Efthymiou is grateful for his post-high school years and wouldn't give it up for anything.

"The army isn't for everyone and it's fine if that didn't work out for some [so Efthymiou said. "Don't feel like you have to enlist]. There are other ways to find a hero or go to college."

### Accepting helping hands

Efthymiou saw many young men get out of the army "traumatized," and said people would understand the physical and mental strain the military puts on young adults.

"People struggle in the army," he said. "The stress that comes from just being in there or not having control over...

...what happens is in that point of time — losing something that no one really talks about."

Though he left the army without any traumas, Efthymiou explained that exams and classes — though not as stressful as being in the army, he said — can be difficult to prepare for.

"Coming here, with... people [were] my classes fluctuate — where some days I'm really good and some days I'm really bad," he said. "It's just because I'm still struggling to figure it out. It's like I have to start all over again."

Though he has not personally used many of the resources Penn State offers, Efthymiou recognizes the benefits of resources available in the Office of Veterans Programs. He also has a positive perspective about the ROTC program.

"I think the ROTC program teaches you really cool stuff," Efthymiou said. "I guess it prepares you for getting put into the heat of it while you are getting an education, which I think is amazing."

Morss, on the other hand, has taken advantage of the resources at the Office of Veterans Programs and is currently completing a work-study there.

"Coming here, finding a job where there are other veterans who get it, it was cool to relate to some folks and some friends," Morss said.

Veterans Outreach Coordinator, Mary Fisk, understands how difficult the transition from military to academia can be, and takes her position in the Office of Veterans Programs to make the change as smooth as possible.

"[The transition] can be tough for some people," Fisk said. "Some people try to avoid it... but it's going to happen. At some point and it's generally not going to be too comfortable."

The office, located in 325 Boucke Building, features certified counselors and a lounge for veterans to study or relax.

Programs available through the office include a mentor tutoring program, a veteran-only career fair and a veteran-specific orientation.

Fisk also worked with the education department to create a first-year seminar specifically for ex-military students that focuses on the transition.

The first by the booth currently used in the class, Fisk is working with the Penn State University Press to create a Penn State edition, which will contain a collec-

tion of personal tales that future students will study. Art pieces of any format and genre will accompany the stories.

Fisk was also able to establish a veteran dormitory option, available in fall 2019, to help incoming students who don't know anyone find a place to live in their first year.

"We've had several veterans that come to school here, especially in the fall semester, who have gotten out of the military week before they start classes," Fisk said. "It's nearly impossible to find affordable housing in State College at this time of year."

While these programs are available to veterans and military dependents, Fisk knows some veterans won't know exactly where to go to access the resources.

According to Fisk, it's "very comfortable" in the military. If the armed services are having problems, individuals seek out leadership "because they'll take care of it."

Further, she noted people who are willing to help can't do everything for veterans.

To Morss, other's campus can do... erans by providing compassion.

"Everybody, you pass by their wounds, their own scars. Just smiling with every day," Morss said. "If you can use the fact that there's a lot of walking among you as a reminder that there's some people that are shouldering weight you can't even fathom."

> "Coming here, finding a job where there are other veterans who get it, it was cool to relate to some folks and some friends."
>
> Robert Morss
> junior

*Courtesy of Robert Morss*
Robert Morss (junior-secondary education) was deployed three times before coming to Penn State.

*Collegian Creative*

## What is

4-18-22

To Whom it may CONCERN:

Hello my Name is Ralph Gresham, I'm an inmate at Northern Neck Regional Jail, Warstw Virginia. I'm writting this Letter in Reference of my fellow inmate and Brother in Christ, Mr. Robert Morss, I have been housed with Mr. Morss now going on 6 months, and I've come to respect and love this guy since meetting him in November. ME I've been in this situation a few time myself and I've never met anyone in my entire life with so much compassion for life and has a Heart bigger than I could ever imagine. Rob has definitely shown and taught me some things about life and myself and my respect level for this guy is past infinity. Although he is here with me, he doesn't belong here. There is so much more He could do outside of the walls, to help so many people. and ME a 44 year old, Black man, who has been a repeat offender most of my life, I will be the first to say, Mr. Robert Morss has helped change my life and my way of thinking and I thank God I met this Guy and he has my upmost repect and my Love and my prayers. Our world needs more Robert Morss's. He is most definitely one of the most positive individuals I've ever met, and I wrote this letter with all honesty and respect. Thank You!

Mr. Ralph Lee Gr—

To whom it may concern, I'm writing this letter on behalf of Mr. Robert Morss, in regard to his character and his seemingly inherent good nature. For going on 3 months now I have lived in the same small quarters as Mr. Morss (the trustee pod) at NNRJ, where we both hold jobs. In this time, I have had the opportunity to observe and further get to know Mr. Morss and how he carries, not only himself, but his actions and attitude to the people around him as well. My first thoughts upon Mr. Morss's character even before conversing with him we're "This guy seems out of place" and "I wondered how a seemingly well natured and intelligent person found himself to be locked up." After spending time with other "Dangers" prior to being housed with Mr. Morss, I quickly assumed he was caught up in the same situation. Soon after profiling and later confirming this, I continued to observe as well as experience the positivity and enthusiasm that Mr. Morss exudes in just about everything he does and says. I've witnessed him donate his time and energy to help any and all people around him, whether it be cleaning the unit (which he does daily, thoroughly and graciously), or making sure nobody is hungry or need's anything. Mr. Morss is always selfless in how he conducts himself. He also runs and directs a church service for everyone in the unit and prays daily for the wellbeing of everyone, involved or not. He inspires positivity and philanthropy in and around me and it has been an honor and a privilege to meet and better get to know him over these past 3 months. Jail isn't the most positive place to be and there are many people stuck in negative ways and depression. Mr. Morss's good nature and ability to not only stay positive, but inspire others to do the same, is truly a rare and unique quality that I thought should be expressed to whomever it may concern.

Honestly,

My name is Brad Perkins and I am happy to write this letter to whom it may concern. I am currently serving a 31 month sentence at the Northern Neck Regional Jail that I am about to complete. However this letter is Not About me but About Mr. Robert Morss. In the last 6 months After I first met Mr. Morss I have seen a pattern with him. As I'm sure the Court is Aware of Mr. Morss is An Army Ranger Penn State Grad, and High School Teacher. Very Impressive for 28 year old! However I would like to write About the man I've Known the last 6 months. People are led to Mr. Morss because of his positive energy and Christian Values. The Kindness of a man who leads Bible Studies Prayer Services and Church Services Daily. The Giving of A man who takes his time to Draw Birthday Cards as he did for my Daughter Kingston. The Same man who gives countless dollars in Food each week to help those without with No expectation of anything in return. Growing up I was Always taught to respect my elders. At close to 20 years his elder I am happy to call him Mr. Morss because his character has earned it. I call him my Friend because his leadership, Faith, Hope, Love are Second to None.

From: Thomas Jason Pitts
Northern Neck Regional Jail
P.O. Box 1060
Warsaw, Va.

To Whom it May Concern;

I am writing this letter on behalf of Mr. Robert Morss, Wartime Army Veteran, History Teacher and Good Man. I am uniquely qualified to pen such a letter for reasons becoming clear by it's conclusion.

I have inhabited Northern Neck Regional Jail with him for over a year. Lived in the same compact dormitory with him. Eaten meals at a table that was always blessed with prayer. Witnessed him innitiate a daily prayer circle among the men in this dormitory, Keeping the religous services moving forward and inspiring growth in those who participated. I have worked side by side with him, as his job and mine required teamwork and co-operation with our respective personnel, he showing a strong, focused, solid work ethic aimed at completing a task above and beyond the conditions asked.

In an environment designed to bring out the worst in people; to drag people down; to tear people apart; he strived to avoid the effects of this indelibly caustic place. Through perseverence, discipline and wisdom, Mr. Morss has remained positive and a rallying point to those around him for positivity.

This is a man who has unselfishly dedicated his life to service. Selflessly. As a veteran deployed in wartime for 3 tours of duty, he faced his cantry's enemies and faught for the back bone of who we are; God, Cantry and Family. Not just his own, but for all of ours; people he did not know. As a result, he bares the scars, both seen and unseen. Freedom, honor and the right of every American, both living and not yet born, he risked his life to preserve.

He is also a History Teacher. An individual not only entrusted to help raise children, and one with the power to communicate in a way that helps others become educated

d prepared to better navigate life. A teacher of History is a person that understands the past holds the key to the future. History teaches that to avoid making the same mistakes again, we must observe what has come before. This is the message he desired to teach to our children so they could move forward, aware where we have all been and redeem us all by their futures. That's what history is, the chance for redemption. A History teacher understands that better than anyone else.

In our time together, his ability to communicate his thoughts, emotions, ideals and beliefs coupled with his ability to listen and digest the same from others, including me, has created a very strong friendship that will go beyond the walls and fences of this place. He utilized his education and time to help me pen letters to my judge, lawyer and others that have been crucial in my situation.

All told, this war veteran who risked his life for our country and everyone in it multiple times, this history teacher that wants to give his life to the growth of future generations and the future of the human race in general, and who has been a beacon of positivity in a place designed to destroy that very thing, should be considered for ALL he has done, his life in service to others and to those things we all consider most sacred. Not just a single day that is inevitably more political in judgement than anything else.

I write this letter and speak these things because I have seen the darkest hearts of men. The darkest hearts of humankind. The things that make the worst movie monster pale in comparison. I know what light looks like because I have seen the darkness. For 30 years I was in the Virginia Department of Corrections, 1988-2018. Mr. Morss does not belong in this world of madness. But kneeling before God and standing before the Flag. Throwing him away would be a dis-service to both.

Thank You. Sincerely

_____ _____ _____

Tuesday, July 26, 2022

To whom it may concern:

Robert Morss is a wonderful young man that we have known for about 25 years. As a business owner and Nurse Practitioner, we have felt it important to have good friends with strong morals and values around us and our family. Robert and his family have been that to our family. He and our children grew up together. They went to the same schools and even had some of the same teachers. He has been an example to us and our children of someone who would work hard to accomplish his goals while still being kind and considerate to others. He has always been very humble about his goals and accomplishments. There were many occasions in after school and other extra-curricular programs where we had opportunities to observe how Robert interacted with others. He would go out of his way to help younger children, including our son who is 6 years his junior, to feel more comfortable and to teach them. He was always one who would stand up for the little guy.

He has an amazing ability to empathize with a variety of people of different ages and backgrounds. It didn't seem to matter who was at the gathering; he could strike up a conversation with the old guy, the young child, the new mom, or the odd man out and make them feel important and heard. Anyone who spoke with him would know and feel cared about because of his genuine compassion and empathy for other people. I would challenge you to sit across from him, look in his eyes, and have a conversation with him. I'm sure that if you listened, with an open mind, you would hear the humility and humanity that is in this young man who, with the exuberance of youth, has had an occasion or two where his energy and vivacity got the best of him, like all young men occasionally do.

Duty and honor are not just words to Robert. He has proven this time and time again, not just during his service to our country, but in his life goals of going to college, becoming a teacher, like his parents, and being an example to those around him that the ideals of commitment, dignity, and honesty are alive and well today – at least they are in him.

Robert is a close, family friend that we would be proud to call, "son." We hope that you will be able to see the side of him that we have know for over 25 years that is passionate, compassionate, humble, and dedicated to helping his family, friends, and people around him.

Sincerely,

Thomas S. Wiley, Sr. &

Denise S. Wiley

Dear Honorable Judge McFadden,

I am writing you today with a heavy heart to plead for leniency on behalf of Robert Morrs, a man I have had the privilege of knowing for several years.  Rob and I met while we were both studying at Penn State University, and I have come to know Rob as a man of exceptional character, and his current situation does not reflect the person he truly is.

As an Army Ranger, Rob served our country with distinction and honor.  He deployed to Afghanistan three times in four years and experienced heavy combat on behalf of our nation. He witnessed firsthand the atrocities of war and the toll it takes on one's mental health. Despite this, he remained committed to his duties and showed unwavering bravery and dedication to his fellow soldiers.

After his service in the Army, Rob pursued higher education, demonstrating his passion for learning and his desire to make a positive impact on the world.  He earned a bachelor's degree in History and Education from Penn State University, where he continued to demonstrate his discipline, dedication, and work ethic.

However, Rob's life took an unfortunate turn on January 6th, 2021. He found himself in a difficult situation that should have been avoided, which ultimately led to his incarceration. I understand that he made mistakes on that day, but I know that he is good to the core.  He is a man who has been through so much, and he needs our help now more than ever.

I am pleading with you today to take into account Rob's distinguished service to our country, his educational achievements, and his potential for success when considering his sentence.  He is a man who has always been dedicated to our country and community, and I believe that he has great potential to make a positive impact on the world if given a second chance.

I have spoken with Rob multiple times since his arrest in June of 2021.  I know that Rob is deeply remorseful for his actions on January 6th and understands the gravity of his situation.  He has taken steps to better himself and will seek rehabilitation and counseling when he is home. He is determined to make the most of this experience and come out a better, stronger person.

In closing, I urge you to consider Rob's character, his potential for rehabilitation, and the positive impact he can have on society.  I believe that he deserves a second chance, and I hope that you will show him mercy and leniency.

Thank you for your time and attention.

Respectfully,

Alec Billon

To whom it may concern,

I am writing today in hopes to offer more context about the man and situation you now deliberate on, and I am very thankful for your time and consideration. I have known Robert since we were the age of five. We grew up together and were inseparable early in our lives. I would briefly just like to describe the boy I knew growing up. He was a strong boy who above all else put his family first. I had never met someone at that age that showed so much respect and manners at home. This politeness and respect followed him to school, you could see it between him and the teachers. At this age one might think that it was simply an act, he was raised by teachers, surely they talk and he knew it so he just played the game, right? I wouldn't blame you for thinking that at all had it not been for the way he treated his friends and other students. Loyal to a fault, kindness given that was unearned, brave and stout when he stood up for those who didn't quite fit into the social hierarchy of grade school students, he was a leader naturally because of the values he carried. As we grew older we saw each other less and less as we took on more endeavors and life came at us faster and faster, but I always knew I had my friend. We could go months without seeing each other or even speaking, but when I needed him, there was no request too big or talk too heavy. By the end of high school Robert had enlisted in the army. Of course he did, he had every quality you could dream of to serve our country. As I said our paths had split significantly, I went on to become a firefighter here in Reno and he went on to serve our country, but we always stayed in touch. He put his whole life on hold to serve, and his heart never changed. He held all of those great values and morals built on top of a strict code of ethics and love of history, government, and politics. After serving an exemplary career in the army as a ranger, a highly difficult position to achieve, he followed in his parents footsteps going to school to become a teacher. He wanted to continue to serve by helping kids learn and grow, and hopefully impart all of the highly sought after values he possessed to the youth of the nation. This part of my letter may seem to you like I am dramatizing or exaggerating on behalf of my friend, but I ask you to believe me because it is these exact traits that I think lead him to right where he sits now and I hope you see that to be as important as I do. He was swept up in the passions of tribalism that have now embedded themselves into our society by design, as we all have in these last few difficult years in some way or another. He knows this and fully understands the consequences of his actions.

Unfortunately while he was isolated defending this very country our political climate had changed dramatically. I think it would be naive to say that the qualities he possessed have not been capitalized on by both ends of the political spectrum. Regardless of which side you lean towards it has become the social norm to use passion, fear, and loyalty to garner support and momentum for whichever party you choose. Millions of dollars gained at the expense of those of us who go completely unrecognized by the corporate conglomerates seeking viewership, or political leaders simply striving for a vote. All of this with almost no accountability for damage left behind in our neighborhoods, communities and even families. Make no mistake I have talked with Robert at great lengths about how wrong his actions were that day. I have nothing but the utmost respect for law enforcement, I serve with peace officers, they keep me safe so that I can do my job and return home to my three daughters and loving wife. In that very job though I have seen the havoc and chaos created by social media and news agencies all to gain the all precious dollar and vote. During the pandemic I have been spat on by people calling for my help because I was forced to become vaccinated inorder to continue to support my family or

lose my job, without ever being asked what I truly believed or inquiring about me and my thoughts as an individual as a whole. I have been attacked by others because my uniform resembles that of law enforcement and been associated with the heinous actions of rogue officers breaking the very oaths they swore to uphold. In this world of pure tribalism very few take the time to understand an individual before first placing them in a "them or us" category and acting accordingly. I do not hold this against these individuals, but against those who stoak these fires and take no accountability for their actions. Again, I would like to reiterate that by no means do I excuse his actions, but I do understand the battle our generation now faces being bombarded with antagonizing rhetoric on both sides. All one has to do is simply open their phone and every social media platform fills you with reasons to hate your neighbor. Turn on your television and you will see plain as day how all our societies' woes fall upon those who support the other side no matter the network you choose to indulge in. Robert and myself have plenty of political disagreements shaped by our experiences and events of our lives leading us to this very moment, and yet, I know he would sacrifice anything to do right by me or my family. That is how society is supposed to be, learn to love your neighbors and look after eachother. We should seek to have political debates in the spirit of finding new ideas and compromises, new ways to serve one another because red or blue everyone needs support and help for the betterment of all who live around us, and to help one another conquer the trials and tribulations life holds for us. Unfortunately, for my generation this seems to be a fairytale.

I always learned growing up that the justice system was to reform those who presented a danger to society. The idea being that when a punishment was enforced its' very purpose was a deterrent to change the individual. The goal was to create an appreciation and incentivise the actions of an individual to rejoin society with a yearning to abandon selfish actions of pleasure, addiction, or lack of morality and replace them with a desire to join and better those around them. I believe that Robert has done that, he has accepted and owned his actions and has learned the pain and detriment of what he took part in that day. He has changed lives while serving his time, he has spent full phone conversations helping me through life's petty difficulties while going through so much more without so little as a complaint against the circumstances he is in. He, unlike so many others, has accepted full responsibility for his actions and I believe that society would be better with him in it. I do not fear that he would make the same mistakes he has learned so much from, and I ask only that you seek to find that out for yourself as well. I ask that you see this individual before you as a person, not a number on a docket or one of many from the same situation. I thank you very much for your time and hope that you do not see this as a plea for a friend, rather an invitation to truly see an individual for who they are and allow our justice system to work the way it is intended. I hope this letter finds you and your family well and thank you again for affording me the opportunity to speak with you.

Sincerely,
Joshua Briggs

## INMATE REQUEST FORM

Name _Robert A. Moss_          Time _11:41_

Date _7/27/22_          Housing _J-Pod_

**INSTRUCTIONS:** Please check the problem or request area. **Be specific** about what action you want. This is **not** a greivance form.

☐ Community Corrections
☐ Chaplin
☐ Classification
☐ Commissary
☐ Inmate Accounts
☐ Mail
☐ Medical
☐ Notary

☐ Programs
☐ Property
☐ Records
☐ Shift Supervisor
☐ Special Canteen
☐ Special Visit
☐ Trusty
☐ Work Release
☒ Other _Cpl. English_

**REQUEST:** Dear Cpl. English As of Today I have been incarcerated for almost 14 months Straight. I have been a Resident of your facility since Nov 5th 2021. I have also been a trustee within your Jail for almost 8 months now. Within that large amount of time, I still have not had a single legative issue. Disciplinary Action or woke up on despite diverse & disparaging circumstance. I still learn the Lord each morning and have consistently acted Regular Bible Studies & Prayer Circles each day. And right since my arrival in your Jail. I know I have asked you for a Character letter in the past for my Host to achieve a bond. Though I was met with unfortunate news and have remained behind bars for over a year now my official Trial Date is no less than 35 Days. I am sincerely asking you for a Character Letter once again Regarding my behavior and endeavor. To be who's me I have been the dad of year [I] Before this, I had never been vested or committed as a close. Indeed I deal with Afghan veterans in Army Program Three Tons. Decided to dedicate my life as a High School History Teacher. With a co-degree. I could potentially. Return to being life's... before and trade a job, a place. I left off the opposite way, sible. A few with a family, A first Truth, Servant Citizen. Thank you for you

Time #

Staff Receiving the Request: _____    Date ____ Patience
Supervisory Review: _____    Date ____ Have a
Action Taken: _____    great day!

_____

Response: While you are a federal inmate + I cannot write a character letter, I do appreciate your willingness to help keep the facility clean in your housing unit + the job you do throughout the jail. To date you've been here 264 days with zero incidents + continue to be a model inmate. Thank you for this!

Signature _____    Date _7/28/22_

Original - Completed form forwarded to appropriate file.
Copy 1 - Completed form returned to Inmate with Action Need/Response.
Copy 2 - Retained by Inmate at Time of Request.



**NORTHERN NECK REGIONAL JAIL**

Serving ∘ Richmond Co. ∘ Westmoreland Co. ∘ Northumberland Co. ∘ Town of Warsaw ∘ Gloucester Co.
P. O. Box 1090, 3908 Richmond Road, Warsaw, Virginia 22572
(804) 333-6419 ∘ Fax (804) 333-6029

Ted Hull, CJM, MBA
Superintendent

R. Michelle Lewis
Deputy Superintendent

Amy J. Dameron
Director of Finance &
Administration

Brian Seal
Director of Community Based
Probation & Offender Reentry

Captain Jonathan B. English
Chief of Security

Captain E. B. Luna
Chief of Intake & Receiving

Date:  January 30, 2022

Re:  Letter of Incarceration

Inmate Name: MORSS, ROBERT A.

To whom it may concern,

Inmate MORSS, ROBERT A. was incarcerated at NNRJ November 5, 2021,
through December 19, 2022. While at NNRJ Inmate MORSS worked as a jail
worker as a painter. He did this for approximately 12 months throughout his
incarceration here.

While at NNRJ he was not involved in any incidents. Furthermore, throughout
his 410 days here at NNRJ he remained respectful towards staff. Before he left
he was housed in what we consider a Worker Honor Pod which means he has
not been involved in any kind of incident.


Sincerely,

Chief of Intake and Receiving

Captain Luna

*"Never doubt that a small group of thoughtful, committed citizens can change the world. Indeed, it is the only thing that ever has.".*
*M Meade*

Dear Sir:

It is an honor to vouch for the character of Robert Morss.

Robert is intelligent, gracious, polite, well-spoken, and optimistic. The first time I heard Robert's voice on the phone, I thought, "This is the kindest voice I've ever heard!" He is such an impressive young man!

I would describe Robert as a combination of an Eagle Scout and a gallant knight. He is trustworthy, helpful, friendly, kind, cheerful, honest, and reverent. Robert certainly demonstrates the qualities of chivalry: courage, courtesy, loyalty, and valor.

Robert continually brings encouragement and inspiration to others; he displays outstanding leadership qualities.

Whatever negatively viewed actions of Robert on January 6th must have been due to being caught up in "the heat of the moment." Robert is truly an outstanding individual. I hope that you will find mercy in your heart to extend to Robert.

Sincerely,

Sherry M. Pitts

August 11, 2022

Honorable Judge Trevor N. McFadden,

United States District Court,

DISTRICT of COLUMBIA

Re: Robert Morss

Dear Judge McFadden,

My name is Laurie Dalhaus and my husband of almost forty-five years is Robert Dalhaus. We are jointly presenting this letter on behalf of our dear friend Robert Morss whom we have known for twenty-one years. I am a medical assistant by profession and my husband, Bob is a grocery manager. Together my husband and I have taught self-defense in our community for several years. Both my husband and I hold several black belts and are master instructors in our art.

It was at our school, Dalhaus Martial Arts Legacy where we first met the young eight-year-old Robert, his younger brother Paul, mom Angela, and dad Andrew. We have remained friends with this loving and amazing family to this day. Andrew, Robert, and Paul took classes from us for years and are all high-ranking alumni. Andrew stays involved and is a valued black-belt instructor in the school.

Being instructors in such a demanding sport requires becoming very close to your students. In respect to children, we require high standards of conduct in education, social events, even good and productive participation in the family are all required to continue training participating and advancing in the art of Goju-Kenpo.

Over the years we have had some remarkable students emerge as exemplary role models, inspiring instructors, and strong leaders among the ranks. Robert is one of them. One of my favorite attributes about Robert is his generous, giving, and respectful attitude toward others, even as a young child. He was a good boy who grew into a good seventeen-year-old who eagerly enlisted to serve his Country. With an ear-to-ear grin he said, "Goodbye!" As a supremely brave Army Ranger

he was injured badly. But still came home to earn his bachelor's at Penn State with the aim to give his knowledge to others and continue to contribute to society in a major way.

We are pleading with you Judge McFadden, to show as much mercy and leniency as possible for our dear Robert. Knowing Robert as well as do, we are convinced that even though he went into the Capital on that dark day Robert's intentions, instincts, and goal was to protect people on both sides. That is simply Robert's basic nature and one of his finest characteristics.


Sincerely


Robert and Laurie Dalhaus

# GLENSHAW STEEL SUPPLY

December 13, 2021

Mr. John C. Kiyonaga
600 Cameron Street
Alexandria, VA  22314

Dear Mr. Kiyonaga,

The purpose of this letter is to inform you that I have made an offer of employment to Mr. Robert Morss.  Mr. Morss can begin his employment with us as soon as he is made available.

I understand Mr. Morss has pending charges and will need occasional time off to travel to deal with legal issues and he will periodically need time off to fulfill other court ordered actions such as checking in with probation offices etc.  We will make every accommodation for Robert to fulfill his obligations with no penalty to employment.  Due to his military service to our country, we trust Robert to work in our building and with our equipment. We will fully cooperate with any authority to comply with requirements such as work place verification or unannounced visits by probation officers, etc.

Sincerely

Samantha Pelch
Office/Project Mgr.

1120 William Flynn Hwy
Glenshaw, Pa 15116
USA

PHONE   412-486-0885
FAX      412-486-1035
EMAIL   glenshawsteel@yahoo.com
WEB SITE  glenshawsteel.com



November 17, 2022

Dear Robert Morss,

This letter is to confirm your acceptance for the position of service technician at Sierra Boiler Service, Inc.  The start date is to be as soon as you're available. The following is the agreed compensation for the job:

* Starting pay of $25/hr which will be paid out weekly (Must have direct deposit for paychecks)
* Will be required to be on-call as needed (after proper training)
* 7 days of PTO (personal time off)
* Medical and Dental Insurance for employee will begin the first of the month following 60 days of employment and will be paid by Sierra Boiler Service, Inc.  (Spouse/Family may be covered at an additional expense to the employee at the rate required by the Insurance Policy for the effective plan)
* The company offers ten paid Holidays which are dictated by the company
* You will be provided with a company Ipad and credit card
* You will be provided with a vehicle for company use (after proper training)
* A company retirement plan is offered to employee after 1 year of employment (Currently the Company matches 100% up to 3% - subject to change upon Company/Policy changes)

Sincerely,                                           Accepted:

-------------------------------          -------------------------------

Candice George
President

2969 S Highland Dr.   °  Las Vegas, NV  89109   °  LIC#87509
phone:  773-210-1757  °  www.sierraboiler.com



Stimple
&
Ward
company

1-800-SWCOILS
412-364-5200
Fax: 412-364-5288
www.swcoils.com

3400 Babcock Blvd.
Pittsburgh, PA USA
15237-2473

December 13, 2021

To Whom it may Concern:

An application for employee has been received from Robert A. Morss. Based upon our openings in the category of production worker, we have decided to offer Mr. Morss a job starting as soon as conveniently possible.

George Dietz
Production Manager

World Class Coils at Down-to-Earth Prices